UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NIDHAL IHSSAN BEYDOUN,                     Case No. 20-11286

                     Plaintiff,        Sean F. Cox
     v.                                  United States District Judge

COMMISSIONER OF SOCIAL               Curtis Ivy, Jr.
SECURITY,                                 United States Magistrate Judge

               Defendant.
_____/

**REPORT AND RECOMMENDATION ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 17, 19)**

Plaintiff Nidhal Ihssan Beydoun brings this action pursuant to 42 U.S.C. §§

405(g), 1383(c)(3) challenging the final decision of Defendant Commissioner of

Social Security ("Commissioner") denying her application for Period of Disability

and Disability Insurance Benefits ("DIB") under the Social Security Act (the

"Act").  This matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment (ECF No. 17), the

Commissioner's cross-motion for summary judgment (ECF No. 19), and the

administrative record (ECF No. 14).

For the reasons that follow, it is **RECOMMENDED** that the Court **DENY**

Plaintiff's motion for summary judgment (ECF No. 17), **GRANT** Defendant's

motion for summary judgment (ECF No. 19), and **AFFIRM** the Commissioner's decision.

## I.   DISCUSSION

### A.   Background and Administrative History

On May 23, 2017, Plaintiff filed an application for a period of disability and DIB which alleged her disability began on June 4, 2015.  (ECF No. 14, PageID.196-202).  On her application, she identified the following impairments as limiting her ability to work: heart murmur, vision abnormalities, varicella, arthritis, deep venous thrombosis ("DVT"), seasonal allergies, depression, obstructive sleep apnea, heterozygous Factor V Leiden mutation, acne vulgaris, condyloma acuminatum in female,  low back pain, morbid obesity, panic disorder, positive ana, arthritis of the wrist, vitamin D deficiency, prediabetic, and fibromyalgia.  (*Id.* at PageID.151-52, 219).  Her DIB claim was initially denied on October 11, 2017. (*Id.* at PageID.165).  She requested a hearing on December 13, 2017 (*id.* at PageID.173), and appeared on March 7, 2019, before Administrative Law Judge ("ALJ") Patrick J. MacLean.  (*Id.* at PageID.79-121).  Ja'Nitta Marbury, a vocational expert ("VE"), testified in the matter.  (*Id.* at PageID.111-20)  On April 11, 2019, the ALJ issued an opinion, which determined that based on the period of disability and DIB application protectively filed on May 16, 2017, Plaintiff had not

been under a disability within the meaning of the Act from June 4, 2015 through the date of the decision.  (*Id.* at PageID.62).

A request for review of the hearing decision was acknowledged as received on May 28, 2019 by the Office of Appellate Operations.  (*Id.* at PageID.192-95). On March 19, 2020, the Appeals Council denied Plaintiff's request for review.  (*Id.* at PageID.48).  Thus, the ALJ's decision became the Commissioner's final decision.  Plaintiff timely commenced the instant action on May 22, 2020.  (ECF No. 1).

### B.   Plaintiff's Medical History

1. Deep Venous Thrombosis

Plaintiff ceased working during June 2015 after developing acute DVT in her left leg.  (ECF No. 14, PageID.44, 412-23).  On June 4, 2015, she presented to Dr. Susan Elizabet Mapels at Michigan Medicine, University of Michigan for evaluation of her acute DVT.  (*Id.* at PageID.419).  During the visit, she indicated she experienced swelling and pain of the left calf.  (*Id.*).  A DVU scan was ordered and showed left lower extremity acute DVT.  (*Id.*).

In June 2015, during a follow-up visit at Michigan Medicine, the provider noted Plaintiff neither exhibited calf pain nor complained of unusual bleeding.  (*Id.* at PageID.432).  However, she complained of periodically experiencing Charlie

horses.  (*Id.*).  Plaintiff's August 3, 2015 treatment notes reflect she was advised to continue treating her DVT with her current medical regimen.  (*Id.* at PageID.433).

2. Fibromyalgia

Plaintiff also suffers from fibromyalgia.  (*Id.* at PageID.418).  According to her June 4, 2015 Michigan Medicine treatment notes, Plaintiff initially took Motrin and Flexeril to address her condition.  (*Id.*).  After being diagnosed with DVT, Plaintiff discontinued Motrin—as she was prescribed Xarelto—and increased her Flexeril treatment from once per day to twice or thrice per day as needed.  (*Id.* at PageID.323, 418).  Further, Plaintiff was taking Tramadol on an as-needed basis. (*Id.* at PageID.418).

During a follow-up visit on August 3, 2015, the provider noted Plaintiff experienced "no pain" in her extremities and she was directed to continue taking Cymbalta.  (*Id.* at PageID.428, 433).  On February 12, 2016, she provided that she felt her fibromyalgia pain was worsening.  (*Id.* at PageID.474).  However, the Michigan Medicine treatment notes reveal that Cymbalta was properly addressing Plaintiff's issues related to fibromyalgia.  (*Id.* at PageID.477).

On February 14, 2017, Plaintiff's treatment notes indicate she expressed her fibromyalgia was chronic but controlled with Flexeril, Effexor, and Tylenol.  (*Id.* at PageID.495).

3. Degenerative Joint Disease of Bilateral Knees

During a June 29, 2015 office visit, Plaintiff stated she was experiencing pain in her right knee, but the treatment notes indicate this was likely an "overcompensation" and she was "cleared to start work on the 7th." (*Id.* at PageID.432). The notes also provide she was scheduled to commence physical therapy on June 30, 2015. (*Id.*).

On August 28, 2015, Plaintiff indicated she felt unstable when walking and could only stand for approximately 30 to 40 minutes. (*Id.* at PageID.434). The notes recommended she continue physical therapy, possibly receive a knee brace, and undergo an ultrasound or an X-ray guided cortisone and lidocaine injection of her left knee joint. (*Id.* at PageID.434). While the treatment notes indicate a form was completed to extend her leave of absence from work for at least three additional weeks, Dr. Quade stated she "would recommend that [Plaintiff] go back to work if she can be sedentary 50% of the time." (*Id.* at PageID.435). In response, Plaintiff indicated this was not an option for her line of work. (*Id.*). Less than a week later, Dr. Kittendorf denied Plaintiff's request for a parking pass and she was again encouraged to return to work. (*Id.* at PageID.436).

On September 24, 2015, Plaintiff presented to Dr. Katherine Hughey, Michigan Medicine at University of Michigan, with bilateral pain in her posterior calves which commenced on or about September 20, 2015. (*Id.* at PageID.441). She stated the pain had been worsening and the level was equivalent to when she

first experienced DVT.  (*Id.*).  Further, the pain worsened with standing for long periods of time.  (*Id.* at PageID.442).  On September 26, 2015, the medical notes indicate after receiving a Gel-One injection in her knee, she experienced one week of relief.  (*Id.* at PageID.444).  In October 2015, Plaintiff underwent an MRI of her right knee which displayed arthritis and frayed medial meniscus but no meniscal tears.  (*Id.* at PageID.323, 396-398).

In May 2016, Plaintiff noted she continued to experience knee pain but understood this was related to her weight.  (*Id.* at PageID.482).  She also stated she was trying to lose weight on her own.  (*Id.*).  On March 28, 2017, the treatment notes indicate Plaintiff complained of lower back and leg pain.  (*Id.* at PageID.502).  She rated her back pain as greater than her leg pain and stated it increased generally while standing and walking.  (*Id.*).  Further, she was unable to stand or walk for more than seven minutes as the pain became too severe.  (*Id.*). Her pain did not improve when she was in a seated position or laying down.  (*Id.*). However, she indicated physical therapy was successful in helping alleviate some of her symptoms.  (*Id.*).

Plaintiff then proceeded to begin treatment with an orthopedic specialist, who administered Gel-One injections, on average, every six months.  (*Id.* at PageID.94, 696-97, 700, 712).  The effects of her Gel-One injections lasted approximately five to six months and Plaintiff found they were helpful.  (*Id.*).  Her

July 2017 and 2018 St. Joseph Mercy treatment notes indicate her bilateral knee degenerative joint disease was mild-to-moderate.  (*Id.* at PageID.696, 699).  In January 2018, Plaintiff's X-rays of her knees revealed moderate-to-severe degenerative changes.  (*Id.* at PageID.714).

4. Lumbar Degenerative Disc Disease

Plaintiff also suffers from back pain.  Shortly after discontinuing Motrin in 2015, Plaintiff reported an increase in back spasms and was prescribed Tramadol which she continued until February 2017.  (*Id.* at PageID.423, 425, 426, 427, 430, 432, 476, 482, 489, 493, 496).

On January 4, 2017, following her initial physical therapy session with Probility Physical Therapy, Plaintiff reported her pain decreased by twenty-five (25) to fifty (50) percent and she had an improved tolerance to forward bending. (*Id.* at PageID.563).  In February 2017, Plaintiff reported improvement with tolerance to rotation and sitting activities although standing and walking were still difficult.  (*Id.* at PageID.581).  In general, Plaintiff's physical therapy notes reflect positive progress–lessened pain level, improved walking tolerance with less pain, improved mobility and tolerance with all functional tasks.  (*See e.g., id.* at PageID.584, 585, 586, 587, 588, 592, 593, 595, 596).  Plaintiff's March 2017 assessment notes indicate her progress had been variable with physical therapy but overall had plateaued.  (*Id.* at PageID.597).  Plaintiff's March 15, 2017 discharge

note indicated she described her symptoms as sixty (60) percent improved overall with improvements in mobility and tolerance to all functional tasks with the exception of standing and walking.  (*Id.* at PageID.602).

Plaintiff returned to physical therapy in 2018 and attended approximately eight sessions for a level of discomfort varying between 5 and 8 out of 10 in lower back pain that limited her ability to stand or walk.  (*Id.* at PageID.626).  The notes indicate "[u]pon re-examination, [she] demonstrated improvement in lumbar flexion, lumbosacral asymmetries and improvement in LE strength."  (*Id.* at PageID.626, 629).  Her March 3, 2018 progress notes indicated she reported a fifty (50) percent overall improvement for lower back pain but no change in her upper back.  (*Id.* at PageID.645).  Plaintiff's April 2018 progress notes reflected continued improvement and decrease in pain levels.  (*Id.* at PageID.657, 663).

4. Obesity

Plaintiff's body mass index is 58.2 and she suffers from morbid obesity.  (*Id.* at PageID.458).  She participated in nutrition education and counseling sessions to assist in her weight loss journey and also participated in sessions to discuss the possibility of bariatric surgery.  (*Id.* at PageID.439-41, 450-463).  The medical notes indicate that her efforts to follow the treatment plan varied.  (*Id.*).  On February 22, 2017, she indicated she was not interested in bariatric surgery and

instead would continue to attempt to lose weight through exercise and alterations to her diet.  (*Id.* at PageID.498).

## C.     The Administrative Decision

Pursuant to 20 C.F.R. § 404.1520(b), at **Step 1** of the sequential evaluation process, the ALJ found Plaintiff had not engaged in substantial gainful activity since June 4, 2015, the alleged onset date.  (*Id.* at PageID.64).  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: degenerative joint disease of the bilateral knees, fibromyalgia, obesity, and major depressive disorder. (*Id.*).  Further, the ALJ concluded Plaintiff's deep vein thrombosis, obstructive sleep apnea, and lumbar degenerative disc disease qualified as non-severe impairments.  (*Id.* at PageID.65).  At **Step 3**, the ALJ found Plaintiff did not have an impairment or combination of impairments that meet(s) or medically equal(s) the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526).  (*Id.*).  Between **Steps 3** and **4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[1] and determined Plaintiff had the RFC

> to perform sedentary work as defined in 20 C.F.R.
> 404.1567(a) except the claimant can never climb ladders,
> ropes or scaffolds; occasionally climb ramps or stairs,
> balance, stoop, kneel, crouch and crawl; must avoid

---

[1] The claimant's RFC is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations.  20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

> concentrated exposure to excessive vibration; avoid
> concentrated use of hazardous moving machinery; avoid
> all exposure to unprotected heights; work is limited to
> simple, routine, and repetitive tasks performed in a work
> environment free of fast-paced production requirements
> involving only simple, work-related decisions.

(*Id.* at PageID.67).  At **Step 4**, the ALJ determined that Plaintiff was unable to

perform any past relevant work.  (*Id.* at PageID.72).  She has a high school

education and is able to communicate in English.  (*Id.*).  At **Step 5**, considering

Plaintiff's age, education, work experience, and RFC, the ALJ determined there are

a significant number of jobs in the national economy that Plaintiff can perform.

(*Id.*).

### D.    Framework for Disability Determinations

Disability is defined in the Social Security Act as the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical

or mental impairment which can be expected to result in death or which has lasted

or can be expected to last for a continuous period of not less than 12 months."  42

U.S.C. § 423(d)(1)(A).  In evaluating whether a claimant is disabled, the

Commissioner is to consider, in sequence, whether the claimant: (1) worked during

the alleged period of disability; (2) has a severe impairment; (3) has an impairment

that meets or equals the requirements of an impairment listed in the regulations; (4)

can return to past relevant work; and (5) if not, whether he or she can perform

other work in the national economy.  20 C.F.R. §§ 404.1520, 416.920.[2]  The

Plaintiff has the burden of proof at steps one through four, but the burden shifts to

the Commissioner at step five to demonstrate that, "notwithstanding the claimant's

impairment, he retains the residual functional capacity to perform specific jobs

existing in the national economy." *Richardson v. Sec'y of Health & Human Servs.*,

735 F.2d 962, 964 (6th Cir. 1984).

### E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

under the Act, the Court "must affirm the Commissioner's decision if it 'is

supported by substantial evidence and was made pursuant to proper legal

standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see*

*also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under

this standard, "substantial evidence is defined as 'more than a scintilla of evidence

but less than a preponderance; it is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241

---

[2] Citations to the regulations or Social Security Rulings are to those effective on the date of the application for disability benefits or the ALJ's decision, where appropriate, unless indicated otherwise.

(quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

The Court's review is limited to an examination of the record only.  *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  Neither the ALJ nor the Court is required to discuss every piece of evidence contained in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

F.   **Analysis**

1.  The ALJ's Evaluation of Plaintiff's Fibromyalgia Pursuant to SSR 12-2p was Appropriate and Adequate

Plaintiff contends the ALJ's evaluation of her fibromyalgia was "woefully incomplete" pursuant to Social Security Policy Interpretation Ruling SSE 12-2p. (ECF No. 17, PageID.754).  To support her position, she states the ALJ only briefly discussed the ramifications of the widespread pain she experiences from

fibromyalgia.  (*Id.*).  She represents due to her condition she also experiences "fatigue or tiredness, thinking and memory problems, muscle weakness, headaches, depression and shortness of breath."  (*Id.*).  As such, the ALJ did not properly evaluate the effects fibromyalgia may have on Plaintiff's ability to engage in substantial gainful activity.  (*Id.*).

In response, the Commissioner argues SSR 12-2p's reference to fibromyalgia symptoms and co-occurring conditions pertains only to the diagnosis of the condition.  (ECF No. 19, PageID.775).  Regardless, the Commissioner asserts the ALJ did discuss the symptoms and co-occurring conditions Plaintiff alleges were not.  (*Id.*).

The undersigned agrees with the Commissioner's position in regard to the ALJ's assessment of Plaintiff's condition under SSR 12-2p.  The purpose of SSR 12-2p is to provide guidance on how an ALJ may "develop evidence to establish that a person has a medically determinable impairment (MDI) of fibromyalgia (FM) and **how [the ALJ] evaluate[s] FM in disability claims** and continuing disability reviews under titles II and XVI of the Social Security Act."  (emphasis added).  Under Step 3 of the analysis, the ALJ concluded Plaintiff had the MDI of fibromyalgia and said condition constituted a severe impairment.  (ECF No. 14, PageID.64).  Once Plaintiff's MDI was established, the ALJ went on to "evaluate the intensity and persistence of [her] pain or any other symptoms and determine[d]

the extent to which the symptoms limit[ed] [Plaintiff's] capacity for work."  SSR
12-2p, IV.B.  The ALJ's decision demonstrates his thorough analysis of Plaintiff's
condition and the related symptoms.  As outlined in the Commissioner's motion,
the ALJ analyzed and discussed both the medical evidence and Plaintiff's
testimony regarding each of the symptoms related to her fibromyalgia—anxiety
disorder (ECF No. 14, PageID.70, 90, 99, 104, 109), fatigue or tiredness (*id.* at
PageID.70, 99), thinking and memory problems (*id.* at PageID.66, 70, 87, 89, 109),
muscle weakness (*id.* at PageID.70, 108), headaches (*id.* at PageID.70), depression
(*id.* at PageID.66, 70, 93, 99), and shortness of breath  (*id.* at PageID.71).

The undersigned is not persuaded by Plaintiff's argument that the ALJ's
evaluation of Plaintiff's fibromyalgia was "woefully incomplete" pursuant to SSR
12-2p based on the inclusion in the ALJ's decision of the lengthy and detailed
discussion regarding the objective medical evidence (*id.* at PageID.68-71), absence
of medical opinions from Plaintiff's providers supporting the limitations Plaintiff
allegedly has due to her fibromyalgia (*id.* at PageID.71), and her own testimony.
Plaintiff's argument is not that the ALJ's evaluation of her condition was
"woefully incomplete" but it is more so that the ALJ's ultimate findings and
conclusion were unfavorable to Plaintiff and thus unsatisfactory.  This is not a
substantial basis to disturb the ALJ's findings.

## 2.  The ALJ's Decision is Supported by Substantial Evidence

Next, Plaintiff contends the ALJ did not arrive at a proper conclusion in regard to her conditions as he failed to consider all of her severe impairments in combination with the co-occurring conditions.  (ECF No. 17, PageID.755).  She argues her testimony regarding the difficulties she experiences from the pain is confirmed by the objective medical evidence in the record and said difficulties prevent her from engaging in work activity.  (*Id.* at PageID.755-56).

In response, the Commissioner highlights that the ALJ specifically discussed Plaintiff's testimony regarding her functional limitations, daily activities, symptoms, and treatment other than medication.  (ECF No. 19, PageID.769-73). The Commissioner's position is after considering this evidence, the ALJ appropriately found Plaintiff's reports of significant pain inconsistent with her improvement with conservative treatment such as medication and physical therapy. (*Id.* at PageID.772).  Further, Plaintiff's statements regarding the severity and intensity of the pain are not corroborated by either the objective clinical evidence or the medical opinions.  (*Id.* at PageID.763).

Social Security Ruling 16-3p, which replaced SSR 96-7p, governs the ALJ's consideration of Plaintiff's subjective symptoms.  2016 WL 1119029 (Mar. 16, 2016).  "A claimant's testimony may be discounted if it is contradicted by the medical reports and other evidence in the record."  *Harley v. Comm'r of Soc. Sec.*,

485 F. App'x 802, 804 (6th Cir. 2012); 20 C.F.R. § 404.1529(c).  In assessing a

claimant's subjective symptoms, the rulings and regulations direct an ALJ to focus

on the consistency of the complaints with the other evidence in the record.

*Barncord v. Comm'r of Soc. Sec.*, 2017 WL 2821705, at *8 (S.D. Ohio June 30,

2017).  "SSR 16-3p instructs ALJs in accordance with the applicable regulations to

consider all of the evidence in the record in evaluating the intensity and persistence

of symptoms after finding the claimant has a medically determinable impairment."

*Coffey v. Comm'r of Soc. Sec.*, 2017 WL 3528952, at *8 n.4 (E.D. Tenn. Aug. 16,

2017).  As to a claimant's subjective symptoms, the regulations counsel ALJs to

consider a number of factors, including: (1) daily activities; (2) location, duration,

frequency, and intensity of pain or other symptoms; (3) precipitating and

aggravating factors; (4) the type, dosage, effectiveness, and side effects of any

medication taken; (5) treatment, other than medication, to relieve pain or other

symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other

factors concerning functional limitations and restrictions due to pain or other

symptoms.  20 C.F.R. § 404.1529(c)(3); SSR 16-3p, 2016 WL 1119029, at *7 ("In

addition to using all of the evidence to evaluate the intensity, persistence, and

limiting effects of an individual's symptoms, we will also use the factors set forth

in 20 CFR 404.1529(c)(3).").

In this instance, substantial evidence supports the ALJ's finding that the record, overall, is inconsistent with Plaintiff's allegations regarding the severity and intensity of her pain.  The record demonstrates that while Plaintiff did suffer from pain, her treatment plan, when followed, helped to moderate the severity of the pain she experienced to an extent that allowed her to participate in a multitude of activities on a daily and weekly basis.

Although Plaintiff expressed that a number of the symptoms from which she suffers (e.g., fatigue, tiredness, memory issues, and depression) prevent her from being able to engage in substantial gainful activity, the record, especially Plaintiff's own testimony, supports the ALJ's finding that she in fact is able to work.  First, Plaintiff cares for her son with special needs on a daily basis by reminding him to complete a variety of tasks throughout the day (ECF No. 14, PageID.86, 89) and driving him to and picking him up from school at least once a week (*id.* at PageID.87).  Next, she completes a number of household chores including, but not limited to, cooking in a chair three to four times per week, sweeping, vacuuming, watching television for an hour at a time, searching the internet for several hours, and loading the dishwasher.  (*Id.* at PageID.90, 109); *see Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997) ("An ALJ may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments."); *see also Grant v. Comm'r of Soc. Sec.*,

2021 WL 1097338, at *9 (E.D. Mich. Mar. 1, 2021) (finding it is appropriate for an ALJ to consider record evidence regarding plaintiff's activities of daily living when assessing whether they suffer from disabling pain).  Further, Plaintiff testified that she goes grocery shopping for an hour approximately twice a week, goes to the gym to swim for an hour three times a week and attends church for an hour on a weekly basis.  (ECF NO. 14, PageID.90-91, 104).  All of these activities support the ALJ's finding that Plaintiff is capable of performing work "limited to simple, routine, and repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple, work-related decisions."  (*Id.* at PageID.67).

The medical evidence, especially the physical therapy and orthopedic treatment notes, indicate that Plaintiff's conservative treatment plan helped to moderate the severity and intensity of the pain she experienced.  On January 4, 2017, following her initial physical therapy session Plaintiff reported her pain decreased by twenty-five (25) to fifty (50) percent and she had an improved tolerance to forward bending.  (*Id.* at PageID.563).  In February 2017, Plaintiff reported improvement with tolerance to rotation and sitting activities although standing and walking were still difficult.  (*Id.* at PageID.581).  Notably, Plaintiff's March 15, 2017 discharge note indicated she described her symptoms as sixty percent improved overall with improvements in mobility and tolerance to all

functional tasks with the exception of standing and walking.  (*Id.* at PageID.602).

In 2018, Plaintiff returned to physical therapy and participated in approximately

eight sessions.  (*Id.* at PageID.626).  The treatment notes indicate "[u]pon re-

examination, [she] demonstrated improvement in lumbar flexion, lumbosacral

asymmetries and improvement in LE strength." (*Id.* at PageID.626, 629).  Her

March 3, 2018 progress notes indicated she reported a fifty (50) percent overall

improvement for lower back pain but no change in her upper back.  (*Id.* at

PageID.645).  Further, her April 2018 progress notes reflected continued

improvement and decrease in pain levels.  (*Id.* at PageID.657, 663).  Overall,

Plaintiff's physical therapy records illustrate that in both 2017 and 2018, Plaintiff

experienced relief and improvement in her low back pain following her therapy

sessions.  (*Id.* at PageID.502, 563, 584, 602, 645).  Moreover, the notes reflect

Plaintiff indicated physical therapy was helping with some of her symptoms.  (*Id.*

at PageID.502).  Plaintiff's orthopedic treatment records demonstrate she found the

Gel-One injections she received, on average, every six months to be helpful and

the effects last approximately five to six months.  (*Id.* at PageID.94, 696-97, 700,

712).  This objective medical evidence supports the ALJ's finding that Plaintiff is

not disabled and physically capable of performing sedentary work.  *Houston v.

Comm'r of Soc. Sec.*, 2014 WL 5752720, at *23 (E.D. Mich. Aug. 25, 2015)

(finding that the plaintiff's conservative treatment course, consisting of

medications, at home exercise, and possibly physical therapy generally indicated

claimant was not disabled); *Carter v. Comm'r of Soc. Sec.*, 2014 WL 3400710, at

\*5 (E.D. Mich. July 10, 2014) (finding that the plaintiff's "conservative treatment

of his pain with prescription medication and one spinal steroid injection" was

inconsistent with his allegations of disabling pain).

Further, Plaintiff's travel activity from 2016 to 2019 supports the ALJ's

finding that she is capable of performing sedentary activity.  During 2015, Plaintiff

drove to and from Alabama with her son to visit a friend.  (ECF No. 14,

PageID.100-101).  She then traveled by car to North Carolina, approximately a 12-

hour drive, in both 2016 and 2018.  (*Id.* at PageID.101-102).

In view of Plaintiff's reported activities of daily living and conservative

course of treatment, the undersigned finds that the ALJ acted within his zone of

choice in finding that Plaintiff's subjective statements were not entirely consistent

with the medical evidence.  Further, based on the undersigned's review of the

record, the ALJ's decision is supported by substantial evidence based on Plaintiff's

testimony and the objective medical evidence referenced in the said decision.

*Cardenas v. Comm'r of Soc. Sec.*, 2013 WL 4501487, at \*3 (E.D. Mich. Aug. 22,

2013) (finding plaintiff's objection fails because the record contained testimony

that conflicted with her purported symptoms and pain).

### G.    Conclusion

Plaintiff has the burden of proof on her statements of error. *Walters*, 127 F.3d at 529. Plaintiff has not shown legal error that would upend the ALJ's decision. For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 17), **GRANT** Defendant's motion for summary judgment (ECF No. 19), and **AFFIRM** the Commissioner of Social Security's decision.

## II.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 13, 2021                    s/Curtis Ivy, Jr.
                                         Curtis Ivy, Jr.
                                         United States Magistrate Judge